Exhibit A

AFFIDAVIT

I, Chad Moore, being first duly sworn, depose and state:

1. I am currently employed as a Technical Positioned State Trooper with the Kansas Highway Patrol (KHP) and have been so employed for over 18 years. I served seven years with the Federal Bureau of Investigation Joint Terrorism Task Force as a Task Force Officer. My current assignment with the KHP is as a Task Force Officer with DEA, having been so employed as a TFO since August September 2020.

2. In addition to initial training, I have received numerous courses of instruction from the KHP, Kansas Bureau of Investigations, El Paso Intelligence Center (EPIC), and training provided by the DEA relating to investigative techniques and conducting of narcotics and drug trafficking investigations. I have participated in and conducted investigations resulting in the arrests of individuals who received and distributed controlled substances, as well as the seizure of illegal drugs and proceeds derived from the sale of those illegal drugs.

3. The information contained in this affidavit is known to your Affiant through personal direct knowledge, and/or through a review of official reports prepared by other law enforcement personnel. This affidavit is submitted in support of a forfeiture proceeding.

4. On May 15, 2025, Kansas Highway Patrol Trooper Cody Parr conducted a traffic stop on a car hauler for a Commercial Vehicle Safety Alliance inspection on westbound US-54 near milepost 40 in Meade County, in the District of Kansas. The vehicle was driven by Cristian Gurin.

5. Prior to stopping the commercial motor vehicle, Trooper Parr drove beside the trailer and copied down multiple license plates from the vehicles on the trailer to check their validity and to determine if any were stolen.

6. One of the vehicles, a Buick Enclave, had registration that expired in 2018.

7. Trooper Parr conducted a deeper investigation of the Enclave based on the expired license plate.

8. Trooper Parr discovered that the Enclave had been in a wreck on April 26, 2016, and it was declared a total loss on September 27, 2016 and a salvage title was issued to an A. Ashwood in Milwaukee, Wisconsin.

9. Wisconsin records indicate the Enclave was titled but never registered. However, on October 14, 2016, A. Ashwood registered the vehicle in Carthage, Mississippi. However, CarFAX indicated that the salvage and rebuilt titles did not get transferred to Mississippi, which could indicate an attempt to wash the title.

10. On November 8, 2017, L. Washington attempted to register the Enclave in Texas, but the title was rejected.

11. Despite the issues with the title, license plate readers indicate the Enclave was driven in Houston, TX on May 1, 2025,

placed on a car hauler in Oaklawn, Illinois on May 7, 2025, and located on a different car hauler on May 14, 2025 in Bloomington, Illinois.

12. According to the shipping documentation for the Enclave, it was picked up on May 12, 2025 in Milwaukee, Wisconsin with a destination in California.

13. The shipping documents indicated that the vehicle was to be picked up at the residence of a 97-year-old woman in Milwaukee, however the commercial vehicle driver told Trooper Parr the pickup address was changed to the Humane Society at the last minute.

14. The shipping documents indicated that the Enclave was to be delivered to the Courtyard by Marriott on Ventura Boulevard in Sherman Oaks, California.

15. Lastly, the shipping documents indicate that the shipper and receiver were the same individual, A. Mayfield. However, this is not the registered owner of the vehicle and the telephone number given by the shipper was not registered to either the owner or the shipper.

16. Trooper Parr requested permission to search the Buick Enclave, and the driver consented.

17. Trooper Parr observed that the carpet underneath the folded down third row seats had been stretched and there was aftermarket glue smeared on the side plastic panels. Additionally, Trooper Parr noticed that a hanging car air freshener had been slid under the carpet.

18. Trooper Par also observed that the third-row seat appeared to be higher than factory height and when the seatbacks were raised, they were extremely close to the roof.

19. Trooper Parr observed that the carpet under the third row had been glued down but the carpet in the rest of the vehicle was not.

20. The seat frame bolts also appeared to be heavily worn, indicating they had been taken out and put back in several times.

21. Based on his observation, Trooper Parr requested that a K9 officer who had responded to the scene conduct a free air sniff on the Enclave. The K9 handler informed Trooper Parr that the K9 had given a positive indication on the vehicle.

22. Trooper Parr utilized a scope to verify the presence of a post manufactured compartment. Through the scope Parr was able to identify multiple packages of United States currency.

23. The Enclave was transported back to Meade where the rear seat was taken out and three vacuum sealed packages of United States currency were located.

24. A separate free air sniff was conducted on the packages of United States currency which resulted in a positive indication by the K9.

25. The currency was packaged first in Ziploc bags and then the Ziploc bags were packaged inside the vacuum sealed bags. Five stacks of $20 bills were wrapped in purple wraps from US Bank and the remainder of the currency was bundled in rubber bands.

26. Upon inspecting the United States currency further, it was noted that several of the $100 bills were stuck together with some sort of blue tacky glue. Additionally, it was discovered that two of the $20 bills were determined to be counterfeit.

27. In total, approximately $184,940.00 in United States currency was located in the three vacuum sealed bags.

28. Based upon the information set out above, Affiant has probable cause to believe that the approximately $184,940.00 seized by the Kansas Highway Patrol constitutes money or other things of value furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to such an exchange, or was used or intended to be used to facilitate one or more violations of Title 21, U.S.C. § 841 et. seq. Accordingly, the property is subject to forfeiture pursuant to Title 21, U.S.C. § 881.

_____
Chad Moore, TFO
DEA

Sworn to and subscribed before me this 17th day of December 20 25

_____
Notary Public

My Commission Expires: 11/28/2027

Kristy Norman
NOTARY PUBLIC
STATE OF KANSAS
My Appt Exp. 11/28/2027